**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JARI MCPHERSON,** | § | |
| **JERALD SAMS, and** | § | |
| **DANIEL MARTINEZ,** | § | |
| **Plaintiffs,** | § | |
| **Vs.** | § | **No. 1:20cv1223-DAE** |
| | § | |
| **TEXAS DEPARTMENT OF** | § | |
| **PUBLIC SAFETY, and Director** | § | **Jury Requested** |
| **Steven C. McCraw, in his official** | § | |
| **capacity,** | § | |
| **Defendants.** | § | |

_____

## SECOND AMENDED COMPLAINT

## NATURE OF THE ACTION

1.    Named Plaintiffs, Jari McPherson, Jerald Sams, and Daniel Martinez bring this action against Defendant TEXAS DEPARTMENT OF PUBLIC SAFETY ("TxDPS") under Title VII of the Civil Rights Act of 1964, as amended, 42 U. S. C. § 2000e et seq. ("Title VII") for unlawful discriminatory and retaliatory employment practices.  Plaintiff Martinez brings his ADA claims only against DPS Director Steven C. McCraw, in his official capacity, ("Director") under the Americans with Disabilities Act, as amended ("ADAAA"), 42 U.S.C. § 12101 et seq. under the *Ex parte Young* theory, and Martinez limits the ADA relief sought to only prospective injunctive relief, attorney's fees, litigation expenses, and costs.

2.    Plaintiffs were variously employed at TxDPS in various locations including Austin, El Paso, and Temple, Texas, at various times since January 2015. TxDPS subjected Plaintiffs to unlawful discriminatory employment practices because of their race/national origin (African American or Hispanic) or in retaliation for their protected activities opposing discrimination in the workplace including but not limited to disparate treatment in the terms and conditions of employment, failure to promote,

pervasive hostile work environments, all in violation of the Civil Rights Act of 1964, as amended (Title VII).

3.    TxDPS's discriminatory/retaliatory adverse actions against the Plaintiffs include, but are not limited to disparately denying Plaintiffs the following: promotions, training, job assignments applied for, protection from harassment and discrimination, equal access to fair and equitable scheduling of work and time off, fair acknowledgement and recognition of superior performance, fair and equitable compensation among other terms, conditions, and/or privileges of employment, all in violation of the Civil Rights Act of 1964, as amended (Title VII).[1]

## JURISDICTION and VENUE

4.    This Court has jurisdiction over this matter pursuant to 28 U. S. C. §1331 (Federal Question) and 28 U. S. C. §1343 (Civil Rights) for the claims brought under the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 2000e-5(f)(3), which is incorporated into the ADAAA at 42 U.S.C. § 12117(a).

5.    Declaratory relief is authorized pursuant to 28 U. S. C. §§2201 and 2202.

6.    Venue is proper in this Court because Defendant's headquarters is located within its District, conducts business in its District and most of the discriminatory employment practices hereafter alleged to be unlawful were committed within the jurisdiction of this District, therefore, venue is proper in this Court, 28 U.S.C. §1391(b) and (c).

7. All conditions precedent have been exhausted and/or performed prior to the filing of the Title VII claims: 1) Plaintiffs raised the issues of race discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), within 300 days of the date of the

---

[1] Martinez's ADA claims also include denial of promotions and disparate harassment and hostile work environment for discriminatory and/or retaliatory reasons due to his disability and/or complaints regarding Martinez's protected activities opposing disability discrimination; all as plead under *Ex Parte Young*, against Director McCraw, in his official capacity, seeking only prospective injunctive relief, attorney's fees, litigation expenses, and costs.

adverse employment actions complained of herein; a federal notice of right to sue letter was received by the Plaintiffs McPherson and Sams, from the DOJ on September 17, 2020 and therefore this complaint was timely filed. Daniels filed his intake questionnaire with the EEOC on September 15, 2021 and received his right to sue letter dated April 26, 2022 and therefore Martinez's complaint was timely filed. See Exhibits A, B, and C which contain copies of the charges (intake questionnaire) and right to sue letters received by Plaintiffs Sams, McPherson, and Martinez, respectively.

## PARTIES

8.   Plaintiff McPherson (PM) is a citizen of the United States and the State of Texas and resides in Bell County, Texas. McPherson may be contacted through his attorney of record in this cause.

9.   Plaintiff Sams (JS) is a citizen of the United States and the State of Texas and resides in Travis County, Texas. Sams may be contacted through his attorney of record in this cause.

10.  Plaintiff Daniel Martinez (PDM) is a citizen of the United States and the State of Texas and resides in Travis County, Texas. Martinez may be contacted through his attorney of record in this cause.

11.  Defendant Texas Department of Public Safety (TxDPS) is a state agency and may be contacted through its attorney of record in this cause.

12.  Defendant Director Steven C. McCraw, in his official capacity, is top administrative representative of a state agency and may be contacted through TxDPS's attorney of record in this cause.

## FACTUAL ALLEGATIONS
### Plaintiff McPherson

13.  Plaintiff McPherson (PM) has served as a commissioned officer with the TxDPS for

3

more than 20 years. During said period of public service, PM has always achieved a "meets expectations" or above rating on each of his annual job performance evaluations and has received special recognition for his work on numerous occasions.

14.  In May of 2018, PM was removed from Regulatory Services Division (RSD) of the TxDPS located in Austin, Texas and placed in the Criminal Investigation Division (CID). PM was assigned to the CID's Temple location. At that time, PM was driving a TxDPS vehicle assigned to PM by TxDPS at PM's request *since 2012*.

15.  While at Temple CID, PM was the only African American in his unit and was subject to numerous instances of outrageous and abusive treatment by TxDPS command because of his race.

16.  In October 2018 PM received a verbal warning from his Lieutenant (Lt.), supervisor, for allegedly leaving his duty station without informing his Lt. although his Lt. had previously authorized him to do so.

17.  PM's similarly situated White co-workers engaged in the same and or similar behavior yet were not subject to receiving verbal warnings for same.

18.  PM's supervisors (including PM's Captain) later elevated said "verbal warning" to a Written warning and later to the more severe form of disciplinary treatment, i.e. issuance of a C-1, which remains in PM's personnel file for the duration of his career and which negatively impacts PM's opportunity for acquiring career enhancing assignments and promotions.

19.  During October-November 2018, PM was issued a "written counseling" for not carrying out a procedure that he had not received training on and therefore had not previously been made aware that such a procedure was required.

20.  In November 2018, a White co-worker told PM that PM's supervisor told the co-worker to install a tracking device on PM's assigned TxDPS's vehicle and specifically to not install said tracking device on the vehicles of PM's similarly situated White co-worker vehicles.

21.  On or about November-December 2018, PM requested of his Lt. permission for PM to grow facial hair on PM's face as is the custom of CID Special Agents such as PM who worked undercover in environments frequented by criminal elements. PM's Lt. denied PM's request to grow facial hair on his face for said purposes. This denial of PM's request resulted in exposing PM to greater danger as he worked his CID assignments. PM's similarly situated White co-workers were not denied the ability to grow facial hair while under cover and were able to and did grow and wear facial hair while working their CID assignments.

22.  During 2018-2019, PM's supervisors (including PM's Captain) disparately, overly, and unfairly scrutinized and criticized PM's written reports. Said criticisms were not factually, linguistically, or professionally supported. PM's similarly situated White co-workers were not treated the same as PM in this regard. For example, on one occasion PM submitted a report that included similar contents and form to a report submitted by one of PM's similarly situated White co-workers, yet the White co-worker's report did not draw the same negative response from the Captain.

23.  At least four (4) White co-workers that worked at Temple CID with PM informed PM that they observed that PM was being treated less favorably than his similarly situated White co-workers under the same or similar circumstances because he was "Black". PM was also told by a black female DPS employee that PM's White male Captain displayed racist attitudes and disparaging conduct toward her.

24.  During 2018-2019, PM's White similarly situated co-workers were routinely encouraged and backed by their supervisors to apply for promotions. PM's supervisors never encouraged or backed PM to apply for a promotion. PM's similarly situated White co-workers were treated more favorably by their supervisors than PM was treated by the same supervisors in matters, including but not limited to, promotions.

25.   PM complained to his supervisors and other higher level command staff at TEMPLE CID, that since PM had arrived at that work location, PM had been subjected to unfair racial discrimination. However, PM's supervisors and management representatives did nothing to correct that reported discriminatory mistreatment from PM's supervisors.

26.   On or about October 2019, PM filed a five (5) page written EEOC Complaint with TxDPS's OIG about the above enumerated incidents of unlawful discrimination and harassment based on PM's race. It took the TxDPS approximately five (5) months to investigate PM's complaint and finally on March 6, 2020 provided the results of its investigation which did not sustain any of PM's well-founded and factually supported complaints.

27.   PM found the Temple CID command and environment so "Racially Hostile" that it was intolerable and even interfered with his ability to perform his duties as a sworn law enforcement officer. On or about September 2019, PM requested a transfer out of Temple CID to Austin CID.

28.   On or about the first week of October 2019, PM transferred from Temple CID to Austin CID.

29.   Austin CID's Command was aware of the EEOC Complaint PM filed against Temple CID Command.

30.   Shortly after PDM arrived, his direct supervisor, Capt. Koenig, and others talked to PDM about PM's complaints of race discrimination in Temple cautioning PDM to beware of PM and placing PM in a negative light because of PM's complaints of race discrimination in Temple, telling PDM that PM's complaints were [b.s.] because PM was merely being held accountable, and also to keep an extra close eye on PM.

31.   PDM specifically told Capt. Koenig, PDM's direct supervisor, that PDM would not be treating PM any differently that he would treat his other employees.

32.   PDM observed Capt. Koenig showing displeasure at PDM's response to Capt. Koenig's

instruction regarding PM.

33.  On or about January 24, 2020, Captain Koenig of Austin CID called PM to a meeting with him and PM's Lt. (supervisor).  At said meeting Captain Koenig asked PM if PM felt that his Lt. was treating him differently because PM is Black. Since PM's transfer to Austin CID, Captain Koenig was consistently and unjustifiably critical of PM and treated PM in a disparaging and less favorable manner than the way Captain Koenig treated PM's similarly situated White co-workers.

34.  During the period December 2019-March 2020, PM was routinely discussed in a negative and denigrating manner by Austin CID command to and with PM's similarly situated White co-workers.

35.  Upon transfer to Austin CID, PM asked Austin CID Command to be placed on 7C2 Counter Surveillance Unit (A Career Enhancing Assignment). PM was denied said request by the Austin CID Command for the stated reason that PM was new to Austin CID and therefore needed to go to 7C1 to get experience investigating issues occurring in Austin and that there were no vacancies in 7C2. However, there was a vacancy when PM arrived and then just a couple of months later, Austin CID Command assigned a new white Special Agent ("SA") with no investigative experience as a SA and no counter surveillance experience as a SA to 7C2 instead of assigning the new SA to 7C1 and assigning PM to 7C2.  The new White SA was substantially less experienced and less qualified than PM and his assignment to 7C2 violated the reason that PM was not placed on 7C2. There were no African Americans on the Austin CID 7C2 Counter Surveillance Unit at that time.

36.  Austin CID Command placed PM on the 7C1 Investigative Unit. 7C1 was a segregated unit as it consisted only of persons of color and one immigrant. The Unit's Lt. at the time was, Plaintiff Martinez ("PDM"), Hispanic. Austin CID unit 7C3 consisted of no black Special Agents. Austin CID Command knowingly and intentionally created, fostered, encouraged, and maintained a

racially hostile, harassing, offensive, and segregated work environment.

37.  PM's unit 7C1, the unit consisting of all minorities was given the more difficult and onerous tasks, work, and assignments and given less days off than units 7C2 and 7C3.

38.  To reiterate, Units 7C2 and 7C3 did not have any African Americans on them at that time.

39.  After PM was placed on 7C1, Austin CID Command place two more black employees on Unit 7C1, increasing the number of black SA's to 5 and one immigrant

40.  Unit 7C1 was also assigned to do Units 7C2's and 7C3's work.

41.  Austin CID Command knowingly, intentionally, repeatedly segregated and treated the all-minority unit 7C1 less favorably than their similarly situated co-workers in units 7C2 and 7C3, who were outside of PM's and 7C1's protected classes.

42.  During the first half of June 2020, the Hispanic Lt. supervisor over Unit 7C1, PDM, of the all-minority unit 7C1 made both verbal and written complaints of race and national origin discrimination regarding the way that unit 7C1 was being disparately mistreated by Austin CID Command; as described above.

43.  At least two other black SA's in 7C1 had also made complaints of race discrimination to Austin CID Command prior to PDM's complaints.

44.  Upon information and belief, DPS did not conduct investigations of these complaints of discrimination until two years later; which is when plaintiffs were first interviewed about their complaints from the first half of 2020.

45. A White male Lt. supervising the completely non-black 7C2 circulated racially offensive pictures on his work phone to co-workers during work hours of: 1) himself with a "Hitler Mustache", and 2) one with a White co-worker visibly wearing black socks with the attached comment, "Black Socks Matter", mocking the "Black Lives Matter" movement that was at that time

8

directly involved in the George Floyd protests going on around the Capitol building.

46.  Shortly after PDM submitted his written complaint of race discrimination on June 10, 2020, Austin CID Command finally transferred PM to 7C2 to perform counter surveillance work. However, instead of switching employees between 7C2 and 7C1 so that PDM and 7C1 were not shorthanded, Austin CID Command moved the white employee from 7C2 to 7C3.  This move maintained the absence of non-minorities on 7C1.

47.  This racially offensive and hostile work environment was not addressed, restricted, nor rectified, and instead has been effectively cultivated, encouraged, and maintained by the TxDPS Austin CID.

48.  Upon PM's transfer from Temple CID back to Austin CID, PM was still assigned and in possession of a TxDPS vehicle that he was given an exception to possess and drive since 2012.

49.  Upon PM's transfer from Temple CID to Austin CID on or about October 1, 2019, Austin CID Command knew that PM lived a couple of miles outside of the 50-mile policy limit, yet Austin CID Command allowed PM to continue to drive his assigned TxDPS vehicle for several months without issue either to and from his home or by parking it at a secured location within the 50-mile limit, but much closer to his home.

50.  Then at some point in late 2019 or early 2020, Austin CID Command in January 2020 took away PM's ability to drive the assigned state vehicle at all, both from his home or from a secured location within the 50-mile limit.  This move by Austin CID Command was a disparate application of the written policy from what was allowed by the plain language of the policy and disparate as to the way in which White similarly situated co-workers were allowed to operate their assigned vehicles outside the minimum travel distance under the same or similar circumstances or were provided exceptions to the policy for pretextual and/or fabricated circumstances.

51.  Austin CID Command gave PM an ultimatum to either agree to transfer back to Temple

under the Captain that PM had filed a complaint of race discrimination against or drive his personal vehicle from Killeen to Austin and back.  The transfer back option was made with the assurance that the two-year moratorium on transfers following a transfer would be waived if PM took that option. DPS has still not provided an explanation for why it was willing to provide an exception to the two-year commitment policy proscription from transferring but not able to waive the 50-mile limitation by only 2 miles.[2]

52.   This disparate treatment resulted in the following harms to PM: loss of pay through the loss of compensable travel time, increased fuel expenses and wear and tear on PM's private vehicle instead of the state assigned vehicle, and humiliation at being denied benefits that the White employees and employees that had not complained of discrimination had not experienced.

53.   At some point during the George Floyd protests, while still under PDM's supervision, Chief Ruocco gave PM permission to use his state assigned vehicle to travel to Austin and back from a secured parking location closer to PM's home.

54.   However, after PM was moved to 7C2, which was after PDM's written complaint of discrimination, Austin CID Command took away PM's ability to drive his assigned vehicle to the secured parking.  This removal of PM's use of the state assigned vehicle was under Lt. Hansen and Capt. Koenig.  PM was told by DPS management that Asst. Chief Goodwin reversed his supervisor's approval of PM driving his vehicle in certain emergency circumstances, saying that his supervisor, Chief Ruocco, misspoke.

55.   Asst. Chief Goodwin was aware of PM's prior complaint of race discrimination and

---

[2] Later, PDM was denied a transfer back to El Paso for the reason that DPS was not willing to waive the two-year commitment policy for PDM, again with no explanation for why Austin CID Command was willing to waive the two-year commitment policy for PM but not PDM, especially when PDM had legitimate disability-based reasons for PDM's hardship request to transfer back to El Paso while PM's reasons for transfer back to Temple would have only been economic in nature (though it should be mentioned that PM never requested transfer back to Temple; with that idea coming from Austin CID Command).

PDM's complaint of race discrimination prior to denying Chief Ruocco's approval of PM using his state-assigned vehicle shortly after PDM's complaint of race discrimination against Capt. Koenig.

56.  Two years later, after DPS filed a motion to dismiss, DPS began trying to disparately and inappropriately enforce a policy provision that did not actually apply to PM that Austin CID Command misrepresented required PM to relocate his residence to within the 50-mile limit.

57.  There are multiple similarly situated White region 7 co-workers of PM that were treated more favorably than PM because of their race or the fact that they did not engage in protected activities opposing discrimination in the workplace because they are allowed to drive their state assigned vehicles even though they do not reside within the distance limit and in fact pretextually comply with the distance limit by reporting a false address as their actual residence, when they both maintain a permanent residence and do not comply with the other components of the policy.

58.  TxDPS Region 7 has knowingly, intentionally and with racial or retaliatory animus have and continue to deprive PM of benefits, assignments, acknowledgement, compensation, terms, conditions, and privileges of his employment with TxDPS because of PM's race – African American, or because of PM's protected activities opposing TxDPS's discriminatory mistreatment of PM and other minority employees.

59.  Possession and use of a TxDPS vehicle would afford PM, as does his similarly situated White co-workers approximately two (2) hours of paid overtime per day. PM is denied the privilege, opportunity and benefit of possession and use of said TxDPS vehicle not due to Region 7's "50-mile radius" policy but because he is African American and/or because of his protected activities. As a result, PM has a monthly loss of earnings of approximately $1,500.00 or more on that issue alone.

## FACTUAL ALLEGATIONS
### Plaintiff Sams

60.  Plaintiff Sams (JS) has served as a commissioned officer with the TxDPS for more than

26 years. During said period of public service, JS has always achieved a "meets expectations" or above rating on each of his annual job performance evaluations and has also received special recognition for his work on numerous occasions.

61.   On or about October 2017, while assigned and working in the TxDPS Mounted Patrol Unit JS was falsely accused of making questionable leadership decisions by over working the White officers within the Mounted Patrol unit.

62.   JS at that time was a corporal and had no supervisory authority over any Troopers at all.

63.   Following that allegation, JS was demoted by Highway Patrol Chief Ron Joy, a White male.

64.   During the period 2017 to 2020, JS consistently sought written/evidentiary justification for being subjected to said demotion and was never provided any explanation or justification since JS started asking to the present date.

65.   During the period 2014-2017, JS developed the written manual for operational procedures for the TxDPS Mounted Unit. The TxDPS adopted and implemented said Manual.

66.   On or about September 2018, Lt. David Adkins (White male) of the TxDPS Office of Inspector General (OIG) accused JS of attempting to turn the TxDPS Mounted Unit into a "Buffalo Soldiers Unit."

67.   JS denied such an allegation.

68.   Lt. Adkins has produced no evidence to support his allegation against JS that JS was attempting to turn the TxDPS Mounted Unit into a "Buffalo Soldiers Unit."

69.   JS found the series of unlawful discriminatory actions by TxDPS, beginning in 2017 (with his demotion), to include but not be limited to the unsupported allegation of attempting to turn the TxDPS Mounted Unit into a "Buffalo Soldiers Unit" by Lt. Adkins, racially offensive, harassing, and creating a hostile work environment.

*70.*   On or about November 2017, Joe Ortiz, Commander of TxDPS region 7, told JS, *"can't you see what the perception is with all of these African Americans that are on the Mounted Unit".*

71.   On or about July 2018, Jeremiah Richards, Captain over the TxDPS Mounted Unit took a picture of JS while JS was trimming a horse's hooves.

72.   Captain Richards texted that photo to his friend. Captain Richards then read out his friend's response, stating while laughing, "I have never seen a black man doing that before."

73.   JS was offended by Captain Richards's statement and behavior as racially derogatory, belittling, hostile, and offensive.

74.   On or about October 2018, JS filed a complaint against Captain Richards with the TxDPS OIG for racial discrimination.

*75.*   On or about January 15, 2020, approximately fifteen (15) months after JS filed his complaint of discrimination, the TxDPS OIG provided a written response pertaining to said complaint *sustaining JS's complaint of racial discrimination against Captain Richards.*

76.   On or about July 2018, Captain Richards announced that the TxDPS will soon post for filling a permanent Sergeant supervisory position for the TxDPS's Mounted Unit. Said position was posted in September 2018.

77.   JS applied for that Sergeant position and was not selected.

78.   A lesser experienced White male with less seniority and less qualifications was selected for that Sergeant position. JS was denied said position because of his race, African American and out of retaliation for opposing Captain Richards racially disparaging comments and actions against JS while he was cleaning a horse's hooves.

79.   Captain Richards at all times material hereto was supervisor over the TxDPS's Mounted Unit.

80.   On or about October 2018, JS filed another complaint against Captain Richards for race

discrimination with the TxDPS OIG for improperly interfering with JS's application for promotion to the posted Sergeant position over the TxDPS's Mounted Unit, as referenced above.

81.   On or about March 17, 2020, the OIG issued its finding and decision not sustaining JS's complaints of race discrimination and retaliation against Captain Richards stating in part *"The information obtained failed to reveal misconduct by Captain Richards. However, the investigation identified the potential for improvement that will be addressed through training".*

82.   Captain Richards intentionally interfered with and obstructed JS from being selected for said promotion into the position of Sergeant for the TxDPS's Mounted Unit. Captain Richards intentionally engaged in said unlawful discriminatory conduct because of JS's race, African American and/or in retaliation for JS's engaging in protected activity (complaining against Captain Richards racially discriminatory conduct).

83.   On or about July 2019, said Sergeant position for TxDPS Mounted Unit was posted again. This time TxDPS prohibited applications for promotion into said position and instead allowed only transfers without any legitimate work-related reason for that restriction.

84.   That second Sergeant position was also filled by a person outside of JS's protected class.

85.   The selected person was less experienced and less qualified than JS as that selected person had no experience with horses or the Mounted Unit.

86.   TxDPS disparately and intentionally denied/prevented JS from any possibility of being promoted into said position for reasons of JS's race and/or retaliation for JS's protected activities.

87.   During the period of the second posting of the Sergeant position, JS requested through Captain Rodriguez, supervisor over the TxDPS Mounted Unit, that JS be allowed to apply for said position.

88.   TxDPS denied JS's request without any legitimate work-related reason being provided.

89. JS was again denied promotion into the Sergeant position within TxDPS's Mounted Unit for reasons of his race and/or in retaliation for engaging in protected activity.

## FACTUAL ALLEGATIONS
### Plaintiff Martinez

90. Plaintiff Martinez (PDM) has served as a commissioned officer with the TxDPS for more than 15 years; most recently as a Lieutenant for the last six-plus years. During said period of public service, PDM has always achieved a "exceeds expectations" or above rating on each of his annual job performance evaluations (some of which he had to appeal/grieve after his complaints of discrimination).

91. Despite PDM's outstanding work for TxDPS, TxDPS has never recognized PDM for that outstanding work.

92. PDM is a Hispanic male.

93. Prior to transferring to Austin, PDM received a C1 (disciplinary document that resides permanently in the employee's personnel file) for a circumstance that PDM had complained of disparate treatment between him and Lt. Brett Varvel (White) in a decision made by Capt. Heather Krueger.

94. Shortly after PDM arrived, his direct supervisor, Capt. Koenig, and others talked to PDM about PM's complaints of race discrimination in Temple cautioning PDM to beware of PM and placing PM in a negative light because of PM's complaints of race discrimination in Temple, telling PDM that PM's complaints were [b.s.] because PM was merely being held accountable, and also to keep an extra close eye on PM.

95. PDM specifically told Capt. Koenig, PDM's direct supervisor, that PDM would not be treating PM any differently that he would treat his other employees.

96. PDM observed Capt. Koenig showing displeasure at PDM's response to Capt. Koenig's

instruction regarding PM.

97.  This made PDM uncomfortable regarding Capt. Koenig's and the other employees' motivations for making these negative statements about PM and PM's complaints of race discrimination.

98.  Also shortly after PDM arrived, his direct supervisor, Capt. Koenig, directed PDM to enforce the 50-mile drive distance limit policy on PM. After confirming that Capt. Koenig already knew and had known that PM lived a couple of miles over the 50-mile limit, PDM asked Capt. Koenig why he had allowed PM to drive to Austin and back during the couple of weeks before PDM arrived.  Capt. Koenig did not provide an explanation for the apparent exception to the policy for PM.  As a result, PDM maintained the status quo that Capt. Koenig had established with PM continuing to drive his state assigned vehicle back and forth from Temple to Austin. This continued until PDM was able to arrange for PM to park in a secure location within the 50-mile distance limit closer to PM's home.

99.  PDM also has physical and psychological disabilities[3] that his employer was made aware of by PDM communicating that information in writing to members of his chain of command and also verbally via conversations with his Captain and Major no later than November 2019.

100. PDM collapsed while off duty due to his back injury from his military service in November 2019 and PDM required several weeks of leave to recuperate, which he was provided.

---

[3] To include an 80% disability impairment rating with physical limitations to PDM's ankle, clavicle, hearing, and back; all of which affect PDM's major life activities of ability to walk, sit, stand, sleep, driving for an extended period of time. PDM also has a 70% disability impairment rating for his psychological disability of PTSD which affects PDM's major life activities of reduced work reliability and productivity on occasion due to the following symptoms: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short – and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

101. During that extended leave, PDM's supervisor, Capt. Koenig never checked in on how PDM was doing or recuperating.

102. Capt. Koenig also never met with or discussed any potential accommodations with PDM, much less reasonable accommodations.

103. PDM did have conversations with Maj. Ortiz regarding a desk that would allow PDM to variably stand and sit to accommodate his disabilities.

104. After PDM transferred to Austin from El Paso, PDM witnessed racially and national origin discriminatory treatment of himself and his subordinate employees under PSM's supervision, unit 7C1, by his white supervisor, Capt. Koenig, who treated the White-majority similarly situated units, 7C2 and 7C3, disparately better in multiple and consistent respects.

105. For example, Capt. Koenig would assign disparately heavier/larger workloads, shifts, conditions, shifts, and timing to 7C1 (e.g., more consecutive workdays, work that was peculiar to 7C2 and 7C3, and holiday work schedules) and this occurred through-out Capt. Koenig's supervision over these three squads; sometimes more than others, but without resolving the racial or retaliatory disparities.

106. No work-related reasons were ever given to explain why Capt. Koenig had assigned five black SA's and one immigrant SA to 7C1 while 7C2 and 7C3 both had no blacks and no immigrants on them.

107. PDM complained verbally to Capt. Koenig of racially disparate treatment of his 7C1 squad compared to the other two squads in early June 2020.

108. PDM was aware at that time at least two other black SA's, Alonzo and Livingston, had already complained of racially disparate mistreatment under Capt. Koenig to Capt. Koenig and others but nothing had been done to address, investigate, or rectify those racially disparate

mistreatments.

109. When Capt. Koenig failed to follow-up with PDM regarding PDM's verbal complaint of racial discrimination, PDM submitted a formal notice of complaint of racial discrimination to TxDPS recounting a general description of PDM's observations on June 10, 2020, but indicating that there were other examples of the racially disparate mistreatment.

110. PDM had specifically mentioned to Haddox when he initially complained that PDM was concerned with retaliation for reporting race discrimination on Capt. Koenig.  Haddox told PDM that he had nothing to worry about.  Haddox told PDM that he would contact him to schedule an interview, however, Haddox never reached out again.  PDM tried to reach Haddox several times after that in June, July, and August, attempting to pursue his complaint of race discrimination against him and his 7C1 squad by Capt. Koenig, but Haddox did not respond. Therefore the additional examples were never documented, investigated, or rectified.

111. PDM was not contacted by anyone within DPS's management to interview him about his complaint of race discrimination as part of an investigation or otherwise until after DPS filed a motion to dismiss his complaint in federal court in 2022.

112. PDM did not observe any appreciable changes to the racially disparate mistreatment of him and his squad by Capt. Koenig or the other Lts. and squads from the time of PDM's written complaint through to the time that Capt. Koenig retired in May 2021.  Additionally, Capt. Koenig did not acknowledge or award the outstanding performance of PDM or PDM's subordinates on 7C1 at any time prior to his retire. This would include PDM's lifesaving work with SA Murphy (black) that was nominated for the life-saving award in December 2020 and Capt. Koenig did nothing promote or advocate that PDM and SA Murphy receive this award, even though Capt. Koenig did

not retire for another five months, in May 2021.[4]

113. In fact, the harassment from the other squads and Lts. continued unabated and on occasion in front of Capt. Koenig and Capt. Koenig would not step in or comment that the harassment of 7C1 by 7C2 and 7C3 was inappropriate, in violation of policy, or should be stopped.

114. PDM held out hope that his complaints and the complaints of the other black SA's on 7C1 regarding the race discrimination they were experiencing and reporting would be addressed – especially in light of the obvious racial tension occurring in their workplace and assignments with the George Floyd protests (referred to as "riots" by DPS management representatives) that were directly calling out racially disparate experiences within the population of citizens from law enforcement units in Austin and across the state and country.

115. However, weeks turned into months with no response or relief from the disparate mistreatment of 7C1 compared with the other squads under Capt. Koenig.

116. This absence of response from both Capt. Koenig and DPS's EEO representative, Nathanael Haddox, left PDM with the distinct impression that he had no choice but to deal with the discrimination and harassment on an ongoing pervasive basis and that it appeared that there would be no relief.

117. PDM's concern for retaliation came from Capt. Koenig's negative statements about PM's prior complaints of race discrimination, Capt. Koenig's directives to treat PM differently and more harshly than PDM's other subordinates after commenting negatively about PM's complaints of race discrimination, Capt. Koenig's disparate mistreatment of PM regarding his vehicle usage, Capt. Koenig's displeasure at hearing from PDM's statement that he would not treat PM differently

---

[4] It should be noted that that PM and JS filed suit on December 15, 2020 which is a significant protected activity in this case.

from the other employees, PDM would hear the other Lts. refer to PDM similarly to the way in which PM was degrading as being one who will complain about everything to EEO and therefore was not to be trusted, and Capt. Koenig's refusals to change or stop the racially disparate treatment, among other observations by PDM.

118. PDM also was negatively impacted by the racially motivated harassment contained within the Hitler and Black Socks Matter photos sent on work texts with Capt. Koenig copied on the texts and although PDM requested that such texts stop and that the texts be restricted to professional communications, Capt. Koenig said nothing and the unprofessional texts continued.

119. PDM observed that not only did Capt. Koenig not follow up with PDM to address the disparities in the work assignments and scheduling for which Capt. Koenig admitted and apologized,[5] although he denied the racial motivation, Capt. Koenig began to shun PDM by noticeably reducing his conversations and interactions with PDM.

120. On one occasion, shortly after PDM filed his complaint of race discrimination, PDM met with Capt. Koenig and Maj. Ortiz.  PDM observed that Capt. Koenig was angry.  Maj. Ortiz stated to PDM that he wished that PDM had come to them first.  PDM told Maj. Ortiz that he had gone to Capt. Koenig before and that other employees had also complained to Capt. Koenig, but Capt. Koenig did nothing to address the complaints, so PDM felt he was required to complain to EEO, as per DPS policy as an observer and an Agent of Notice.

121. In response to PDM's statements to Maj. Ortiz, Capt. Koenig did not deny that PDM and other employees had complained to him before PDM filed his written complaint of race discrimination. Instead, Capt. Koenig tried to say that he was trying to fix the problems reported to

---

[5] Capt. Koenig went so far as to say that he observed that the disparate scheduling and assignments were affecting morale and that it needed to be fixed.

him, but PDM stated that there had been no fixes proposed or tried that changed the racially disparate schedules and assignments.

122. Also after PDM submitted his written complaint, 7C2's Lt. Hanson kept his distance from PDM and PDM noticed that 7C2's SA's had begun engaging in picking disputes and conflicts with 7C1 SA's and PDM.

123. A few weeks after PDM's written complaint of race discrimination, PM was finally moved to 7C2 to do counter surveillance.  A White SA was moved off of 7C2 to make room for PM, however, that White SA was not moved to 7C1, but was instead moved to 7C3, resulting in the maintenance of the lack of non-minority non-immigrant on 7C1 and leaving 7C1 with less employees to do more work.

124. PDM's 7C1 was given the most work and was the most productive of the three squads under Capt. Koenig, with the most: investigations assigned, investigations opened, investigations closed, arrests made, reports written, and seizures made among other objective criteria measures documented by DPS in 2020 and 2021, through to when Capt. Koenig retired in May 2021.

125. Capt. Koenig would protect his one White Lt., Chris Hanson, who was over 7C2 and helped Lt. Hanson get promoted to Capt. over PDM.

126. Lt. Ramiro Saldivar (over 7C3) stated to PDM that Capt. Koenig did not want PDM to be working under him and that's why Capt. Koenig put all the minority employees with C1 disciplinary actions on 7C1.

127. Efforts were made to block both PDM and PM from transferring to Austin CID in October 2019, even though both PDM and PM had a policy right to transfer to Austin. Capt. Koenig wanted a White Lt., Mark Berry, to take the spot that PDM took.

128. PDM noticed that Capt. Koenig would reject PM's reports for frequently that any other

employee under PDM even though PDM observed that SA Victor Bibiloni-Sambolin's reports were much worse that PM's (e.g., submitted later and with more grammatical errors).

129. Lt. Saldivar also told PDM that he thought that Capt. Koenig was racist due to the way he treated minority employees compared to the White employees. Lt. Saldivar also told PDM that a former admin to Maj. Ortiz, Anna Lopez, told Lt. Saldivar that she thought that Capt. Koenig was racist by giving preference to Lt. Hanson.  Lopez worked for Maj. Ortiz until November 2019.

130. One of the administrative assistants, Joanne Alvarez, told PDM that she thought that Capt. Koenig was racist.  Despite Alvarez being much more qualified and experienced, the position for the Major's admin was given to the White admin, Amanda Savage. Capt. Koenig would harshly criticize Alvarez's typing and speaking, but since Alvarez supported the Lts., PDM observed that she was very good at her job and that being originally from Puerto Rico, that she had a Puerto Rican accent, but not trouble communicating in English.

131. Approximately two months after PDM submitted his written complaint of race discrimination, PDM started applying for a promotion to make Captain and get out from under Capt. Koenig and this discriminatory and retaliatory management situation.

132. Despite PDM's strong performance, despite the harassment and discrimination to which PDM was subjected, PDM was not selected for promotion to Captain in September 2020 while other less qualified, less experienced, and lower performing White and non-disabled employees that had not engaged in protected activities opposing discrimination in the workplace made the Captain's promotion list.  This would include Lt. Hanson, who was selected for the Captain's list even though his performance was lower as per the criteria measured and documented by DPS in what's called: SPURS, a data base maintained by DPS.

133. Asst. Chief Goodwin was the chair of this Captain promotion board and was aware of

PDM's complaint of race discrimination against Capt. Koenig three months before as well as PDM's complaint of discrimination against Capt. Krueger.

134. On information and belief, the promotion process contains mostly, if not exclusively, subjective criteria with a decided absence of measurable objective criteria by which a panel of at least three management representatives choose and rank persons that are qualified and eligible for promotion to Captain.  Once on the "Captain's List" the open Captain's positions are filled from top to bottom until either the list is emptied or the List expires; after which a new list is created in the same fashion as before.

135. Lt. Hanson made the list in September 2020 and did not promote by the time the list expired in 2021.  Lt. Hanson then made the Captain's list again in November 2021, while PDM again, did not make the list even though PDM was still more experienced, qualified, and higher performing than Lt. Hanson, just like the year before and Lt. Hanson has still not engaged in protected activities like PDM and was still, of course, White and also non-disabled.

136. Following PDM's written complaint of race discrimination, PDM would be unfairly and disparately criticized compared with the other Lts. that had not engaged in protected activities opposing discrimination in the workplace by having his contributions, ideas, by Capt. Koenig and the other Lts. with disparaging comments like "new idea fairy".

137. When PDM was passed over for promotion in September 2020, PDM started looking for a way to remove himself from the discriminatory and retaliatory circumstances he was in under Capt. Koenig as it was impacting with PDM's PTSD and his family members were also suffering from their own medical disabilities.  PDM's request to transfer back to El Paso was referred to as a "hardship transfer".

138. As mentioned above, PDM's request was denied in December 2020 even though his

hardship request to waive the two-year commitment policy before being allowed to transfer was documented with and supported by PDM's and PDM's family members' documented medical disabilities and diagnoses. This denial was in conflict with DPS's willingness to waive the two-year commitment for PM even though he did not have any disabilities to support his claim for hardship.

139. DPS admits that Capt. Krueger participated in denying PDM that hardship transfer back to El Paso without explanation for why PDM did not qualify for that hardship transfer, given his disability issues. Capt. Krueger's effort to deny PDM that hardship transfer back to El Paso in December 2020 was due to PDM's prior complaint of discrimination against Capt. Krueger, PDM's complaint of discrimination against Capt. Koenig or in racial or national origin discrimination in preference for a white male person on the Lt's. promotional list, Derek Pearson (who would have expired on the list had PDM transferred to back to El Paso).

140. As an alternative, theory, though, Plaintiffs allege that as part of its retaliatory harassment of PM and PDM, DPS's disparate willingness to waive the two-year commitment for PM and not for PDM were in furtherance of DPS's retaliatory harassment and hostile work environment given the following for each of these two plaintiffs:

- For PM: DPS's willingness to waive the two-year commitment despite a lack of anything other than a financial burden to not be allowed to use his state-assigned vehicle, would have seen PM return to the reported racially discriminatory supervision of Capt. Schwartz and take PM away from his chosen career path at the Capitol, both of which DPS was aware that PM did not want;
- For PDM: DPS's contrary unwillingness to waive the two-year commitment for PDM to transfer back to El Paso would have seen PDM remain in Austin under the racially disparate and retaliatory supervision of Capt. Koenig and suffer psychologically and have his family members suffer psychologically, all of which DPS was aware of when PDM made a detailed written request for a hardship transfer back to El Paso.

141. PDM was denied the hardship transfer back to El Paso on December 18, 2020 due to his race, national origin, disabilities, disabilities of his family members, and/or in retaliation for his

protected activities.

142. Capt. Maurice Fischer over CID San Antonio told SA Jonathan Oduwole (black on 7C1) that Capt. Koenig retired in approximately May 2021 as a result of PDM's complaint of race discrimination the year before in June 2020.

143. Maj. Jennifer Baskerville (black) told PDM that Chief Goodwin (who chaired both promotional boards for Captain that denied PDM a place on the Captain's promotion list) told her that she had to select Lt. Hanson off of the Captain's list in 2021 just before the 2020 list was about to expire. Maj. Baskerville did not select Lt. Hanson because she felt that he was not qualified for the position. Maj. Baskerville told PDM that she wanted PDM for her Captain's position and that he should reapply for the Captain's promotional list.

144. As stated above, Chief Goodwin again denied PDM access to the Captain's promotional list in November 2021 despite being more qualified, experienced, and a higher performer than Lt. Hanson.

145. Capt. Krueger, who PDM complained about discrimination when Capt. Krueger gave PDM a C1 permanent disciplinary action,[6] also sat in on the promotional board for Captain in November 2021, with Chief Goodwin that denied PDM access to a spot on the Captain's list.

146. As asserted above, promotional Boards, like the one that denied PDM a spot on the Captain's list in November 2021 are very subjective and missing any substantial amount of objectively measurable or comparable criteria to assess the non-discriminatory work-related reason for the decisions to promote one applicant and deny another.

---

[6] PDM also included factual allegations in his EEOC documentation establishing his complaint that Capt. Krueger treated PDM disparately compared with Lt. Bret Farvelle (white) when she gave PDM a C1 for disparate and unsupported reasons. Lt. Farvelle has since demoted to SA following a series of negative performance issues.

147. On information and belief Capt. Krueger participated and was instrumental in denying PDM a spot on the November 2021 Captain's list.

148. On information and belief, there is a two-part process to get on the promotional list – 1) submit an application and performance evaluations, and 2) sit for an interview that includes two core questions and three questions based upon the documents submitted.  There are no policy questions, no objective measures, and the questions can vary from one applicant to the next.  An additional critical part is that there is a box to check on the application if one has a C1 in their record, like PDM, regardless of how long ago that occurred. This is understood generally within DPS as a negative issue that will detract from promotional opportunities without objective measure.

149. PDM was denied a promotion to Captain on November 15, 2021 due to his race, national origin, disabilities, and/or in retaliation for his protected activities.

150. Following the completion of the two-year commitment in October 2021, PDM was eligible to transfer back to El Paso.  The first available Lt. position came open in approximately September 2022 and PDM put in for it.

151. However, before, PDM was allowed to transfer, Capt. Krueger participated in reorganizing the CID unit there to that when PDM arrived, he would not be under her supervision. PDM did not ask for this, yet DPS participated in this unique action.

## FACTUAL ALLEGATIONS
## COUNT I

## VIOLATION of TITLE VII- *RACE or NATIONAL ORIGIN DISCRIMINATION*

### Plaintiffs Jari McPherson, Jerald Sams, and
### Daniel Martinez

152. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 151.

*153.* At all relevant times, there was in effect a federal statute, the Civil Rights Act of 1964, as

amended, 42 U. S. C. § 2000*e et seq.,* which provides: It shall be an unlawful employment practice for an employer- *(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U. S. C. § 2000e-2(a).*

154. Defendant was aware, or should have been aware, of Title VII and that it is illegal to treat an employee differently because of the employee's race or national origin.[7]

155. During Plaintiffs' employment with Defendant, they were subjected to acts of racial and/or national origin discrimination by Defendant's management representatives, employees, or supervisors.

156. This illegal race and/or national origin discrimination created a disparate, hostile, and abusive work environment for Plaintiffs.

157. Defendant's conduct as described above constitutes a willful violation of Title VII.

158. As a direct and proximate result of the unconstitutional and illegal acts of the Defendant, as alleged herein, Plaintiffs have sustained violations of their rights to a work in an environment free of unlawful racial and/or national origin discrimination.

## COUNT II

## VIOLATION of TITLE VII-*UNLAWFUL RETALIATION*

### Plaintiffs Jari McPherson, Jerald Sams, and Daniel Martinez

159. Plaintiffs reallege and incorporate by reference Paragraphs 1-158.

*160.* At all relevant times there was in effect a federal statute, the Civil Rights Act of 1964, as

---

[7] PM and JS are black and claim race discrimination.  PDM is Hispanic and claims race and/or national origin discrimination.

amended, 42 U. S. C. § 2000*e-3(a)* which provides, *"It shall be an unlawful employment practice for an employer to discriminate against any of its employees….because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."*

161. Defendant was aware, or should have been aware, of Title VII and that it is illegal to treat an employee differently and or terminate an employee's employment because of the employee's race, national origin, and/or opposition discriminatory activity.

162. Plaintiffs PM, JS, and PDM opposed the unlawful racially and/or national origin discriminatory conduct from Defendant verbally and in writing as described hereinabove.

163. Defendant and its agents have retaliated against Plaintiffs for their active and expressed opposition, both verbally and in writing, to Defendant's unlawful discriminatory employment practices as described hereinabove.

164. Defendant's retaliation against Plaintiffs in response to Plaintiffs' protected activities include but is not limited to the following disparate and/or discriminatorily pretextual actions: demotions, denial of promotions, harassment, hostile work environment, disciplinary actions, poor performance evaluations, denial of career enhancing assignments/opportunities, denial of training, denial of the use of TxDPS vehicles, denial of overtime, and pretextual disciplinary actions against Plaintiffs, and creating and maintaining a racially and/or national origin offensive and hostile work environment for Plaintiffs.

165. Defendant's conduct as set forth above were willful, intentional, and or made in reckless disregard of Plaintiffs' rights.

166. Defendant's adverse actions against Plaintiffs, as set forth above, is so harmful that it would dissuade a reasonable worker from engaging in protected activities.

28

167. Defendant's conduct as described above constitutes a willful violation of Title VII.

## COUNT III

## VIOLATION of TITLE VII- *HARASSMENT AND HOSTILE WORK ENVIRONMENT-RACIAL and/or NATIONAL ORIGIN DISCRIMINATION*

### Plaintiffs Jari McPherson, Jerald Sams, and Daniel Martinez

168. Plaintiffs reallege and incorporate by reference Paragraphs 1-167.

169. At all relevant times there was in effect a federal statute, the Civil Rights Act of 1964 as amended, 42 U. S. C. § 2000*e et seq.,* which provides: It shall be an unlawful employment practice for an employer- *(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U. S. C. § 2000e-2(a).*

170. Plaintiffs, since on or about 2017 to present have been racially and/or national origin harassed by Defendant and or its agents as hereinabove described.

171. The racial harassment has included but is not limited to racially and/or national origin demeaning, derogatory and discriminatory comments and conduct of an offensive and racial and/or national origin nature directed at Plaintiffs culminating in the creation of a racially and/or national origin discriminatory harassing and hostile work environment.

172. The unlawful racially and/or national origin discriminatory actions of Defendant and its management representatives, employees, and supervisors were willful.

173. The conduct of Defendant's agents and employees racially and/or national origin harassing Plaintiffs as described hereinabove constitutes racial and/or national origin hostile work environment in violation of Title VII.

## COUNT IV

## VIOLATION of TITLE VII-*FAILURE TO PROMOTE*
## *RACE AND/OR NATIONAL ORIGIN DISCRIMINATION*

### *Plaintiffs Jerald Sams and Daniel Martinez*

174. Plaintiffs reallege and incorporate by reference Paragraphs 1-173.

175. At all relevant times herein, Plaintiffs JS and PDM were employees and Defendant was their employer, covered by and within the meaning of § 701 of Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e.

176. Plaintiff JS is an African American and Plaintiff PDM is Hispanic and therefore both are members of a protected group based on their race and/or national origin.

177. Defendant subjected Plaintiffs to adverse employment decisions by refusing to promote them to positions for which they were fully qualified and had applied.

178. Defendant instead hired, promoted, or placed on promotion lists persons that were substantially less experienced and less qualified than JS and PDM and not of JS's and PDM's protected racial and/or national origin protected groups.

179. Defendant refused to promote both Plaintiff JS and PDM twice each, as described hereinabove.

180. Defendant's refusal to promote Plaintiffs was intentional and pretextual for racial and/or national origin discriminatory motives.

## COUNT V

## VIOLATION of TITLE VII-*FAILURE TO PROMOTE RETALIATION*

### *Plaintiffs Jerald Sams and Daniel Martinez*

181. Plaintiffs reallege and incorporate by reference Paragraphs 1-180.

182. At all relevant times herein, Plaintiffs JS and PDM were employees and Defendant was their employer, covered by and within the meaning of § 701 of Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e.

183. Plaintiffs JS and PDM engaged in protected activities known by the decisionmakers denying them promotions and therefore both are members of a protected group based on their protected activities.

184. Defendant subjected Plaintiffs to adverse employment decisions by refusing to promote them to positions for which they were fully qualified and had applied.

185. Defendant instead, hired, promoted, or placed on promotion lists substantially less experienced and less qualified persons that had not engaged in protected activities, like JS and PDM.

186. Defendant refused to promote both Plaintiff JS and PDM twice each, as described hereinabove. Defendant's refusal to promote Plaintiffs was pretextual for retaliatory motives.

187. Defendant was aware, or should have been aware, of Title VII and that it is illegal to treat an employee differently because of the employee's protected activities.

188. Plaintiffs JS and PDM both opposed the unlawful racially and/or national origin discriminatory conduct of Defendant verbally and in writing as described hereinabove.

189. Defendants and its agents retaliated against Plaintiffs JS and PDM for their active and expressed opposition verbally and in writing to Defendants unlawful discriminatory employment practices as described hereinabove.

190. Defendant's retaliation against Plaintiffs in response to Plaintiffs' protected activity included refusing on two (2) separate occasions to promote both Plaintiff JS to the position of TxDPS Sergeant Mounted Unit and Plaintiff PDM to the position of Captain.

191. Defendants conduct as set forth above were willful, intentional, and or made in reckless disregard of Plaintiffs' rights.

192. Defendant's conduct as set forth above is so harmful it would dissuade a reasonable worker from engaging in protected activities.

193. Defendant's conduct as described above constitutes a willful violation of Title VII.

### COUNT VI

### VIOLATION of ADA-
### *DISABILITY DISCRIMINATION-DENAIL OF ACCOMMODATION*

### *Plaintiff Daniel Martinez*

194. Plaintiff realleges and incorporates by reference Paragraphs 1-193.

195. At all relevant times herein, Plaintiff PDM was employed by Defendant, covered by and within the meaning of employer and person under § 12111 of the ADA and § 701 of Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e.

*196.* At all relevant times there was in effect a federal statute, the ADAAA, 42 U. S. C. § 12112 *et seq.,* which provides: "*No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.*"

197. Plaintiff PDM is and has been disabled with physical disabilities and psychological disabilities, both listed above, during all relevant periods raised in this Complaint and therefore is protected by the ADA based on his disabilities that affect multiple major life activities for PDM also as identified above.

198. PDM requested an accommodation due to his disabilities in what TxDPS referred to as a hardship transfer, but TxDPS denied PDM's request without engaging in an interactive process and without providing an explanation for the denial of the requested accommodation, especially since it conflicted with DPS's willingness to waive the two-year commitment policy for PM but not

for PDM, when PM only had a financial hardship and not a bona fide disability hardship and an associated disability hardship with PDM's family members'.

199. Defendant subjected PDM to adverse employment decisions by refusing to promote PDM to positions for which he was substantially more qualified than the non-disabled individuals that TxDPS selected for the positions/promotions and promotional lists.

200. Defendant refused to promote Plaintiff PDM twice, as described hereinabove. Defendant's refusal to promote Plaintiff was pretextual for disability discriminatory motives.

201. Defendant's conduct as set forth above was willful, intentional, and/or made in reckless disregard of PDM's rights under the ADA.

**COUNT VII**

**VIOLATION of ADA-*RETALIATION***

***Plaintiff Daniel Martinez***

202. Plaintiff realleges and incorporates by reference Paragraphs 1-201.

203. At all relevant times herein, Plaintiff PDM was employed by Defendant, covered by and within the meaning of employer and person under § 12111 of the ADA and § 701 of Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e.

204. At all relevant times there was in effect a federal statute, the ADAAA, 42 U.S.C. § 12203, which provides: *"No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." And "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise*

*or enjoyment of, any right granted or protected by this Act."*

205. Plaintiff PDM engaged in protected activities known by the decisionmakers denying his promotions and therefore PDM is a member of a protected group based on his protected activities.

206. Defendant subjected PDM to adverse employment decisions by refusing to promote PDM to Captain positions that PDM had applied for and for which PDM was substantially more qualified than the persons that TxDPS placed on those promotional lists, like Lt. Hanson; who had not engaged in protected activities.

207. Defendant refused to place PDM on a promotional list twice, as described hereinabove. Defendant's refusal to promote Plaintiff was pretextual for retaliatory motives.

208. Defendant was aware, or should have been aware, of the ADA and that it is illegal to treat an employee differently because of the employee's protected activities.

209. PDM engaged in protected activities by both opposing the unlawful disability discriminatory conduct by Defendant against PDM and by PDM requesting reasonable accommodations; both, verbally and in writing as described hereinabove, which are both protected activities triggering the anti-retaliation protection under the ADA.

210. Defendant's conduct as set forth above was willful, intentional, and/or made in reckless disregard of PDM's rights under the ADA.

211. Defendant's conduct as set forth above is so harmful it would dissuade a reasonable worker from engaging in protected activities.

## COUNT VIII

## VIOLATION of TITLE VII- *HARASSMENT AND HOSTILE WORK ENVIRONMENT- RETALIATION*

### Plaintiffs Jari McPherson, Jerald Sams, and Daniel Martinez

212. Plaintiffs reallege and incorporate by reference Paragraphs 1-211.

*213*. At all relevant times there was in effect a federal statute, the Civil Rights Act of 1964, as amended, 42 U. S. C. § 2000*e-3(a)* which provides, *"It shall be an unlawful employment practice for an employer to discriminate against any of its employees….because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."*

214. Defendant was aware, or should have been aware, of Title VII and that it is illegal to treat an employee differently and or terminate an employee's employment because of the employee's race, national origin, and/or opposition discriminatory activity.

215. Plaintiffs, since on or about 2017 to present, have been subjected to retaliatory harassment by Defendant and or its agents as hereinabove described.

216. The retaliatory harassment has included but is not limited to consistent and persistent demeaning, derogatory and discriminatory comments, disparate and onerous scheduling, heavier workload assignments, denial of awards and acknowledgements for superior performance compared with employees that have not engaged in protected activities, disparate harassment to include name calling, criticisms, ridicule, and other negative comments for having filed complaints of discrimination, for a period of no less than a year and a half up to three years, culminating in the creation of a pervasive retaliatory harassing and hostile work environment.

217. The unlawful retaliatory harassing actions of Defendant and its management representatives, employees, and supervisors were willful.

218. The conduct of Defendant's agents and employees retaliatory harassing of Plaintiffs as described hereinabove constitutes retaliatory hostile work environment in violation of Title VII.

### *RELIEF SOUGHT ON ALL COUNTS*

### *Plaintiffs Jari McPherson, Jerald Sams, and Daniel Martinez*

**WHEREFORE**, Plaintiffs Pray for an order entering Judgment against Defendants, and awarding Plaintiffs the following relief:

a. An order of this Court granting equitable damages including requiring Defendants to promote Plaintiff JS to Sergeant TxDPS Mounted Unit and set a pay rate and seniority that would be equitable had JS been promoted when he should have first obtained that promotion;

b. An order of this Court granting equitable damages including requiring Defendants to promote Plaintiff PDM to a TxDPS Captain and set a pay rate and seniority that would be equitable had PDM been promoted when he should have first obtained that promotion;

c. In the alternative, an order of this Court granting equitable damages including front pay should the Court determine front pay to be the more appropriate equitable remedy for Plaintiffs;

d. An order of this Court granting equitable damages restricting further retaliatory actions against the Plaintiffs and their respective units, co-workers, and/or subordinates;

e. An order of this Court granting equitable damages including requiring Defendant to restore to Plaintiff JM the privilege of the use a TxDPS vehicle as enjoyed by JM's similarly situated White co-workers;

f. An award of economic damages as determined by a trial in this matter to include past and future loss wages including overtime, to the fullest amount allowed by law for each Plaintiff;

g. An award of noneconomic compensatory damages as determined by a trial in this matter in the fullest amount allowed by law;

h. An award of attorney's fees and costs both through trial and on appeal, should that be required in this matter;

i.  An award of pre and post-judgment interest in the highest lawful amount; and

j.  An order of this Court granting Plaintiffs further relief that it deems just and equitable.

Respectfully submitted,

*/s/ Leonard Mungo*
Leonard Mungo (P43562)
Mungo & Mungo At Law, PLLC
Attorneys for Plaintiff
31700 Telegraph Rd., Ste 250
Bingham Farms, MI 48025
caseaction@mungoatlaw.com
(248)792 7557
LEAD ATTORNEY FOR PLAINTIFFS

*/s/ Margaret K. Schulman*
John E. Schulman
State Bar No. 17833500
jschulman@schulmanlaw.com
Margaret K. Schulman, Esq.
State Bar No. 17833900
mschulman@schulmanlaw.com
THE SCHULMAN LAW FIRM, P.C.
6440 N. Central Expressway, Suite 210
Dallas, TX 75206
Tel: 214-361-2580
Fax: 214-361-6580
CO-COUNSEL FOR PLAINTIFFS

/s/ Robert Notzon
Robert Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
Robert@NotzonLaw.com
(512) 474-7563
(512) 852-4788 facsimile
CO-COUNSEL FOR PLAINTIFFS

37

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification to all counsel of record through ECF by the United States District Court, Western District of Texas, Austin Division, on November 21, 2022 to:

Drew Harris, Assistant Attorney General
General Litigation Division
300 W. 15th Street, 11th Floor
Austin, Texas 78701
Drew.Harris@oag.texas.gov

　/s/ Robert Notzon　　　　　　　
Robert Notzon

# EXHIBIT "A"

# JERALD SAMS



U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

September 17, 2020

Mr. Jerald A. Sams
c/o Leonard Mungo, Esquire
Law Office of Mungo & Mungo
31700 Telegraph Road
Suite 250
Bingham Farms, MI  48025

Re:  EEOC Charge Against Texas Dept. of Public Safety
      No. 450201905843

Dear Mr. Sams:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Dallas District Office, Dallas, TX.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by      /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Dallas District Office, EEOC
   Texas Dept. of Public Safety

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974  See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA  ☒ EEOC | 450-2019-05843 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency  if any | |

| Name (indicate Mr , Ms , Mrs ) | Home Phone (Incl  Area Code) | Date of Birth |
|---|---|---|
| Jerald A. Sams | (512) 551-3327 | 1969 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2909 Kerbey Heights Ct., Pflugerville, TX 78660 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below )

| Name | No. Employees  Members | Phone No (Include Area Code) |
|---|---|---|
| TEXAS DEPARTMENT OF PUBLIC SAFETY | 500 or More | (512) 424-2890 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 5805 North Lamar Boulevard,  Post Office Box 4087,  Austin, TX 78773 | RECEIVED | |

| Name | No. Employees  Members | Phone No (Include Area Code) |
|---|---|---|
| | JUL 25 2019 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | EQUAL EMPLOYMENT OPPORTUNITY COMMISSION DALLAS DISTRICT | |

DISCRIMINATION BASED ON (Check appropriate box(es) )

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 10-02-2018 | 07-25-2019 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s))

I.    **PERSONAL HARM:**

a.    I applied for the position of Mounted Patrol Sergeant in September 2018. I was denied the position on October 2, 2018.

b.    I believe that the hiring and interview process is subjective and unfair because the questions are not standardized or job related, and the interview panel is only required to have one minority. If the board does not have a minority then a minority is selected to monitor the interview but has no input in the selection.

c.    I have been denied the ability to apply for the position when it opened again in mid-July 2019, after Sgt. Devenport request to transfer back to his previous position.

II.    **RESPONDENT'S REASON FOR ADVERSE ACTION:**

a.    **No reason given.**

b.    **No reason given.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief SIGNATURE OF COMPLAINANT |
| Jul 25, 2019 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 450-2019-05843 |

Texas Workforce Commission Civil Rights Division                and EEOC

*State or local Agency, if any*

c.    **No reason given.**

III.    **DISCRIMINATION STATEMENT:** I believe that I was discriminated against because of my Race-Black/African American, in violation of Title VII of the Civil Rights Act of 1964, as amended in that I believe I was the most qualified candidate for the position. David Devenport (White), who had been removed from the Mounted Patrol in 2015, was selected.  I believe that I was retaliated against in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended in that I have requested investigations into the selection and have now been denied the position after Mr. Devenport again left the Mounted Patrol because of his inability to do the job. The Respondent has decided to post the position as a transfer and it appears that they will select Sgt. Wong, who has no experience with horses, to transfer into the position.

**RECEIVED**

JUL 25 2019

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
DALLAS DISTRICT

| I want this charge filed with both the EEOC and the State or local Agency, if any I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Jul 25, 2019 _____<br>*Date*          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 450-2019-05843 |

**Texas Workforce Commission Civil Rights Division** and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Jerald A. Sams | (512) 551-3327 | 1969 |

Street Address: 2909 Kerbey Heights Ct., Pflugerville, TX 78660       City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| TEXAS DEPARTMENT OF PUBLIC SAFETY | 500 or More | (512) 424-2890 |

Street Address: 5805 North Lamar Boulevard, Post Office Box 4087, Austin, TX 78773       City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address:       City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 10-02-2018 | 07-25-2019 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

## I. PERSONAL HARM:

a. I applied for the position of Mounted Patrol Sergeant in September 2018. I was denied the position on October 2, 2018.

b. The person/trooper promoted over me/selected for the position was a White male and was not qualified and or less qualified for the position than I was. I was not selected for the position/promoted into the position of "Mounted Patrol Sergeant" because of my race "Black".

c. I have been retaliated against by the Texas Department of Public Safety (TDPS) for engaging in protected activity of protesting and complaining and challenging the decision to

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

Date: 1/4/20       Charging Party Signature

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 450-2019-05843 |

**Texas Workforce Commission Civil Rights Division** and EEOC

*State or local Agency, if any*

not select /promote me into the position of "Mounted Patrol Sergeant" on or about October 2, 2018 because of my race. The retaliation against me by the TDPS for engaging in said protected activity included but is not limited to upon posting that same position again on or about July 2019 the TDPS employed a process to fill said position in a way that would ensure would not have an opportunity to apply for and or otherwise be selected to fill said position even though I am the most qualified for said position. I protested about this process to my captain Anthony Rodrigues and requested that I be given an opportunity to apply for said position and I was denied an opportunity to do so.

d. Because of my race "Black", the TDPS prevented me from the opportunity of being promoted to the position of "Mounted Patrol Sergeant" when the position became available on or about July 2019 by making the position available on a transfer basis only rather than on a promotional and or transfer basis. Said position was again filled by a person/trooper outside of my protected class.

II. RESPONDENT'S REASON FOR ADVERSE ACTION:
a. No reason given.
b. No reason given.
c. No reason given.
d. No reason given

III. DISCRIMINATION STATEMENT: I believe that I was discriminated against because of my Race-Black/African American, in violation of Title VII of the Civil Rights Act of 1964, as amended in that I believe I was the most qualified and on at least one occasion the only qualified candidate for the position. David Devenport (White), who had been removed from the Mounted Patrol in 2015, was selected in 2018 and Sgt. Wong an Asian American was selected over me in 2019. For the selection process used by the TDPS in 2019 to fill said position I believe that I was retaliated against in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended in that I had requested investigations into the 2018 selection process to fill said position and as a result was denied even the opportunity to apply to fill said position when it was posted the second time after the White male, Mr. Devenport who was selected over me in 2018, again left the Mounted Patrol because of his inability to do the job. The TDPS posted the position as a transfer opportunity only, intentionally excluding me from the selection process, and thereafter selected Sgt. Wong for said position, who has no experience with horses and is outside of my protected class, to transfer into and fill said position. Because of my race "Black", the TDPS prevented me from

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 1/4/20       *[signature]*<br>Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

Scanned by CamScanner

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 450-2019-05843 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

the opportunity of being promoted to the position of "Mounted Patrol Sergeant" when the position became available for a second time on or about July 2019. I protested about this process to my captain Anthony Rodrigues and requested that I be given an opportunity to apply for said position and I was denied an opportunity to do so.

AMENDMENT TO ADD:

CLASS ALLEGATIONS:
I also file these charges because I believe that the Texas Department of Public Safety maintains a pattern or practice of discrimination against minorities and specifically African Americans in promotions in violation of Title VII of the Civil Rights Act of 1964, as amended. I have been denied the opportunity to be promoted by the Texas Department of Public Safety to the position of Sergeant. I believe there are similarly situated minorities, including but not limited to African Americans who have also been discriminatorily denied promotions to various ranks, including but not limited to the ranks of sergeant and above and file this charge on behalf of those individuals. Also, the Texas Department of Public Safety promotional policy has a disparate impact on minorities, including but not limited to African Americans, because people of color are subject to not being selected for promotions at a disproportionate rate. The Texas Department of Public Safety's promotional policy is neither job-related nor consistent with business necessity and adversely impacts promotional opportunities for minority candidates including but not limited to African Americans.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I declare under penalty of perjury that the above is true and correct. | NOTARY – When necessary for State and Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| 1/4/20 _____<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

# EXHIBIT "B"

# JARI McPHERSON

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

September 17, 2020

Mr. Jari G. McPherson
c/o Leonard Mungo, Esquire
Law Offices of Mungo & Mungo
31700 Telegraph Road
Suite 250
Bingham Farms, MI  48025

Re:  EEOC Charge Against Texas Dept. of Public Safety
        No. 450202004262

Dear Mr. McPherson:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Dallas District Office, Dallas, TX.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                        Sincerely,

                                        Eric S. Dreiband
                                        Assistant Attorney General
                                        Civil Rights Division

                              by      /s/ Karen L. Ferguson
                                        Karen L. Ferguson
                                        Supervisory Civil Rights Analyst
                                        Employment Litigation Section

cc: Dallas District Office, EEOC
     Texas Dept. of Public Safety

Equal Employment Opportunity Commission

TRANSMITTAL TO DEPARTMENT OF JUSTICE OF REQUEST FOR
NOTICE OF RIGHT TO SUE

*(The attached charge involves state/local government or political subdivisions, including public education institutions.)*

| TO: | FROM (Area or District Name/Address): |
|---|---|
| U.S. DEPARTMENT OF JUSTICE<br>CIVIL RIGHTS DIVISION<br>EMPLOYMENT LITIGATION SECTION<br>4 CONSTITUTION SQUARE<br>150 M STREET, NE – ROOM 9.514<br>WASHINGTON, D.C. 20530 | **DALLAS DISTRICT OFFICE**<br>**207 S. HOUSTON ST.**<br>**3RD FLOOR**<br>**DALLAS, TX 75202**<br>OFFICE WHERE CASE FILE IS LOCATED:<br>(If different from above) |

NOTICE OF RIGHT TO SUE TO BE ISSUED BASED ON THE INFORMATION PROVIDED BELOW

| NAME/ADDRESS OF CHARGING PARTY TO WHOM NOTICE IS TO BE ADDRESSED: | IF CHARGE WAS THIRD PARTY CHARGE, NAME AND ADDRESS OF AGGRIEVED PERSON TO WHOM NOTICE IS TO BE SENT: |
|---|---|
| **Jari G. McPherson**<br>**8001 Prescott Drive**<br>**Killeen, TX 76542**<br><br>[ ] Charging party has filed the charge on behalf of an aggrieved person whose identity is confidential (29 CFR 1601.7(a)). | |

NAME/ADDRESS OF RESPONDENT(S) AND EEOC CHARGE NUMBER(S):

**TEXAS DEPARTMENT OF PUBLIC SAFETY**      450-2020-04262
**5805 North Lamar Boulevard,**
**Post Office Box 4087,**
**Austin, TX 78773**

ATTACHED IS A REQUEST FOR NOTICE OF RIGHT TO SUE FOR THE ABOVE CHARGE(S) AND OTHER ATTACHED DOCUMENTS AS INDICATED BELOW:
LETTER OF REQUEST FROM:

| [ ] CHARGING PARTY DATED: _____ | [X] ATTORNEY FOR CHARGING PARTY DATED | **Jul 25, 2020** |
|---|---|---|
| ATTACHMENTS: [X] ORIGINAL CHARGE | [ ] AMENDED CHARGE | [ ] CAUSE DETERMINATION<br>(If issued) DATED _____ |

THE CHARGE WAS FILED (Filing Date) _____ **May 9, 2020** _____

[X] Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the date shown above.

[ ] Please indicate on the Notice of Right To Sue that the Commission will continue to process this charge.

| NAME AND TELEPHONE NUMBER OF CONTACT PERSON *(Use FTS No.)* | DATE |
|---|---|
| **ROBIN R. SCOTT, (972) 918-3620** | **08-14-2020** |

| TYPED NAME OF EEOC OFFICIAL | SIGNATURE |
|---|---|
| **BELINDA F. MCCALLISTER** | *Kandra Saylor for* |

DEPARTMENT OF JUSTICE USE ONLY

| [ ] RS | [ ] OMITATTY# | [ ] DCT | [ ] FILE |
|---|---|---|---|
| 1 | 2    3    4 | 5    6    7    8 | 9    10 |

REMARKS

_____

_____

_____

_____

EEOC Form 257 (11/09)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 450-2020-04262 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Jari G. McPherson | (254) 258-5193 | 1981 |

| Street Address | City, State and ZIP Code |
|---|---|
| 8001 Prescott Drive, Killeen, TX 76542 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| TEXAS DEPARTMENT OF PUBLIC SAFETY | 201 - 500 | (512) 424-2890 |

| Street Address | City, State and ZIP Code |
|---|---|
| 5805 North Lamar Boulevard, Post Office Box 4087,  Austin, TX 78773 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 09-15-2018   Latest: 10-30-2019

☒ CONTINUING ACTION

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

..................................SEE ATTACHMENTS "A1" AND "A"...............................................................

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 7/11/2020 _____<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

**ATTACHMENT A1**

During the period May 2018 through October 2019 I was subjected to a racially hostile work environment, Unlawful Race Discrimination and Retaliation for engaging in protected activity within the Texas Department of Public Safety. During this period I experienced the following including but not limited to; working in an employment environment in which persons of color including but not limited to myself and other African Americans in which we were and are treated in an inferior, degrading and less favorable way than our White counter parts in every respect because of my and our race. The same consisted of including but not limited to Being treated less favorably and unfairly on performance evaluations, disciplinary treatment for the same and or similar conduct and or performance as my White similarly situated co-workers. I was also denied career enhancing  job assignments, denied other privileges, benefits and opportunities of employment within the department because of my race, including but not limited to the following; being denied use of an Agency Vehicle (while same was provided to my White co-workers), a position on the 7C2 CSU Squad that I applied for was given to a less qualified White co-worker. The aforementioned treatment not only occurred because of my race but also in retaliation against me because I opposed (complained on numerous occasions) about the above described discriminatory treatment and racially demeaning and hostile environment which I and other co-workers of color were consistently subjected to. In June 2020 The Hispanic Lieutenant supervisor of my unit filed an internal EEOC complaint against the Agency for reason that my unit which consisted totally of persons of color were exposed consistently to unfair and racially demeaning treatment and denied the opportunities and privileges of employment as those enjoyed by my/our White similarly situated co-workers because of our color and or race. More than one Lieutenant has communicated to me that I was and am being treated in a disparate and unlawful discriminatory way and retaliated against by the Agency because of my race and protected activity. This has taken away from and affected my income and me and my family's health, welfare and safety. I am also bombarded each day by complaints and stories from my Minority co-workers of racially discriminatory treatment which they have been subjected to by the Agency because of their race and or color. The above   described racially discriminatory treatment of myself and my minority co-workers has discouraged me from applying for promotions as based on the circumstance I was and am faced with would render such initiatives futile. I have desired to apply for promotions but have been directly and indirectly discouraged and or interfered with by the Agency preventing me from applying for promotions unlike my White similarly situated co-workers who have been encouraged, assisted in doing so and actually receiving such promotions and career enhancing assignments.

## ATTACHMENT "A"
### MCPHERSON

## CLASS ALLEGATIONS:

I also file these charges because I believe that the Texas Department of Public Safety maintains a pattern or practice of discrimination against minorities and specifically African Americans in the area of promotions, creating and maintaining a "Racially Hostile Environment" and Retaliation against African Americans and other Minorities/Protected Classes when those individuals report and or file formal and or informal complaints against the Texas Department of Public Safety (TDPS). I have been unlawfully discriminated against and victimized by the TDPS by being subjected to "Racially Hostile Environment" Retaliated against for reporting same including being denied the opportunity for career enhancing assignments and being promoted. I believe there are similarly situated minorities, including but not limited to African Americans that have been unlawfully discriminated against and victimized by the TDPS by being subjected to "Racially Hostile Environment" Retaliated against for reporting same including being denied the opportunity for career enhancing assignments and denied promotions based on Race including but not limited to the ranks of sergeant and above and file this charge on behalf of those individuals. Also the Texas Department of Public Safety promotional policies and other TDPS policies and practices and customs has a disparate impact on minorities, including but not limited to African Americans, because people of color are subject to not being selected for career enhancing assignments and  promotions at a disproportionate rate, are subjected to a "Racially Hostile Environment" and Retaliated against for reporting same. The Texas Department of Public Safety's policies that create and maintain said unlawful discriminatory work conditions for African Americans and other minorities/protected classes  is neither job-related nor consistent with business necessity and adversely impacts African Americans and other minorities/protected classes.

# EXHIBIT "C"

# DANIEL MARTINEZ

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Dallas District Office**
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 04/26/2022

**To:** Mr. Daniel Martinez
13806 Rosebud Isle Dr.
Manor, TX 78653
Charge No: 450-2022-00064

EEOC Representative and email:   Juan Munoz
CRTIU Supervisor
juan.munoz@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 450-2022-00064.

On behalf of the Commission,

Digitally Signed By: Linda Sales Long
04/26/2022
Linda Sales Long
Acting District Director

**Cc:**
Phillip Adkins
TEXAS DEPARTMENT OF PUBLIC SAFETY
Phillip.Adkins@dps.texas.gov

Beatrice Falls
Mungo A Law
bfalls@mungoatlaw.com


Please retain this notice for your records.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA [X] EEOC | 450-2022-00064 |

| **Texas Work Force Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Daniel Martinez** | **(915) 345-8311** | **1985** |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| | **Manor, Texas 78653** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name Texas Department of Public Safety | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Texas Department of Public Safety** | **More than 500** | **(512) 424-5900** |

| Street Address | City, State and ZIP Code |
|---|---|
| **5805 North Lamar Boulevard** | **Austin, Texas 78752** |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest      Latest |

[X] RACE    [ ] COLOR    [ ] SEX    [ ] RELIGION    [X] NATIONAL ORIGIN

[X] RETALIATION    [ ] AGE    [X] DISABILITY    [ ] GENETIC INFORMATION

[ ] OTHER *(Specify)*

Earliest: **09-28-2020**    Latest: **11-15-2021**

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was first employed by the Texas Department of Public safety in September 2007.

On or about June 2020 I filed an internal EEOC Complaint against my Captian, Mark Koenig, because he discriminated against myself and my unit that consists of "Minorities" by denying myself and members of my unit the same terms, privileges, conditions and opportunities afforded "White" units that reported to Koenig. Further, Koening continuously unfairly assigned heavier work loads, and work conditions to myself and my unit compared to that of the "White" employees and units that reported to Koenig.

I was denied promotion to Captain on September 28, 2020 for reasons of my race, National Origin, Disability and in retaliation for protected activities; including filing my internal EEOC Complaint.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 4/1/22            *[signature]* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date        Charging Party Signature | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 450-2022-00064 |

Texas Work Force Commission                                        and EEOC

*State or local Agency, if any*

I was denied a hardship transfer on December 18, 2020 for reasons of my race, National Origin, Disability and in retaliation for protected activities; including filing my internal EEOC Complaint.

I was denied promotion to Captain on November 15, 2021 for reasons of my race, National Origin, Disability and in retaliation for protected activities; including filing my internal EEOC Complaint.

I and my unit continue to be victimized by ongoing unlawful discriminatory conduct by the Texas Department of Public Safety and its various agents.

Further, I believe that the Texas Department of Public safety maintains a pattern or practice of discrimination against racial and ethnic minorities in promotions. They have been denied promotions to various ranks, including but not limited to the ranks of Captain and above. Also, the Texas Department of Public safety promotional policy has a disparate impact on racial and ethnic minorities because people of color are subject to not being selected for promotions at a disproportionate rate compared with white employees. The Texas Department of Public safety promotional policy is neither job-related nor consistent with business necessity and adversely impacts promotional opportunities for racial and ethnic minority candidates. Minorities are also routinely retaliated against by the Texas Department of Public safety for opposing and participating in processes aimed at abating/addressing said discriminatory practices.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY -- *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| 4/1/22 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date                Charging Party Signature | |

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION



### EEOC INQUIRY QUESTIONNAIRE

For Official Use Only – Inquiry Number:

---

Thank you for contacting the U.S. Equal Employment Opportunity Commission ("EEOC"). The information you give us on this Questionnaire will help us assist you and determine if your concerns are covered by the employment discrimination laws we enforce. Answer **all** questions completely and briefly. Please write clearly.

After completing this Questionnaire (Form 290A), **return it immediately** to the EEOC office identified in the cover letter to this Questionnaire, or to the receptionist if you are completing this Questionnaire in an EEOC office. Instead of completing this Inquiry Questionnaire, you can submit an inquiry online at https://publicportal.eeoc.gov/portal/.

**Please note: This Questionnaire is not a Charge of Discrimination.**

This Questionnaire is **not intended** for use by applicants for federal jobs or employees of the US government. For complaints of job discrimination in federal employment, see http://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm.

| | |
|---|---|
| **Personal Information** | Last Name: _MarTiNez_    First Name: _DanieL_    MI: ____<br><br>Home Phone: _____    Email Address: _____<br><br>Street Address: _____    Apt.: _____<br><br>City: _MaNOR_    County: _TRAViS_ State: _TX_ Zip Code: _78653_<br><br>What is the best way to reach you? _Cell/Mail_<br><br>What are the best days and times to reach you? _ANY DAY/TiME_<br><br>Do you need language assistance? Yes ☐ No ☒<br><br>If so, what do you need? _NA_<br><br>Date of Birth: _ / / 1985_    Sex: Male ☒ Female ☐<br><br>General information about you that will allow us to serve all individuals better:<br><br>i. Are you Hispanic or Latino? Yes ☒ No ☐<br><br>ii. Do you have a disability? Yes ☒ No ☐<br><br>iii. What is your race? Please choose all that apply: American Indian or Alaskan Native ☐    Asian ☐<br><br>White ☐    Black or African American ☐    Native Hawaiian or Other Pacific Islander ☐<br><br>iv. What is your National Origin (country of origin or ancestry)? _MeXiCAN_ |
| **Who can we contact if we are unable to reach you?** | Name: _Diana MarTiNez_    Relationship: _WiFe_<br><br>Address: _____    City: _MaNOR_ State: _TX_ Zip Code: _78653_<br><br>Home Phone _____    Email Address: _____ |

---

**THIS QUESTIONNAIRE IS NOT A CHARGE OF DISCRIMINATION**

| | |
|---|---|
| **What happened to you that you think was discriminatory and when did it happen?** | EXAMPLES: I was denied an accommodation I needed to perform my job; I was fired because I was pregnant; I was laid off because of my age. State the date the action happened.<br><br>Date: 12/18/2020   Action: Hardship Transfer Denial<br>Denied transfer, given option to demote, despite available vacancy<br>Date: 9/28/2020   Action: Passed over for Captain Promotion<br>Harassed, Threatened for Protected Activity<br>Name of Person(s) Responsible: Chief Buarco, Assistant Chief Grantham, Et al. |
| **What reason(s) were you given for this job action?** | Reason(s) I was told I had a "bonifide" hardship but due to previous work history in El Paso. I had to demote<br>Who told you this? Chief Buarco, RD Alanis   His or Her Job Title: Chief / Director |
| **What is your job, previous job, or the job you applied for?** | Date Hired: 10/15/2020   Job Title at Hire: Lieutenant CID Capitol<br>Annual Pay Rate When Hired: $89,074   Last or Current Annual Pay Rate: $99,074<br>Job Title at Time of Alleged Discrimination: Lieutenant<br>Date Your Employment Ended: Current   Select One: Quit ☐  Discharged/Laid off ☐<br>Name and Title of your Immediate Supervisor: Captain Mark Koenig<br>Job Applicants - What was the title of the job you applied for: Captain<br>Date you applied: 7/30/2020   Date you found out you were not hired: 9/28/2020 |

Was another person in the same or similar situation treated the same, better, or worse than you?
EXAMPLES: Who else applied for the same job? Who else had the same attendance record? Who else had the same performance appraisal?

| | |
|---|---|
| **Who was treated BETTER than you?** | 1. Name: Christopher P. Hanson   Job Title: Lieutenant<br>Check how they are different from you:<br>Age ☐   Color ☑   Disability ☐   National Origin ☐   Race ☑   Religion ☐   Sex ☐<br>How were they treated better? Was favored by Capt. Koenig, received better work schedule, awards, promotion opportunities   Date: 2019-Present<br>2. Name: Tammy Leach   Job Title: Lieutenant<br>Check how they are different from you:<br>Age ☐   Color ☑   Disability ☐   National Origin ☐   Race ☑   Religion ☐   Sex ☑<br>How were they treated better? Preferred by Captain Heather Krueger for schedules, preference on personnel. Overtime   Date: 2016-Present<br>Transfer opportunities, pay |
| **Who was treated WORSE than you?** | Name: Jari McPherson   Job Title: Special Agent<br>Check how they are different from you:<br>Age ☐   Color ☑   Disability ☐   National Origin ☐   Race ☑   Religion ☐   Sex ☐<br>How were they treated worse? Constantly scrutinized, denied waiver for travel policy, denied transfer, harassed by   Date: 2016-2020<br>CID Lieutenants and Capt. |

**THIS QUESTIONNAIRE IS NOT A CHARGE OF DISCRIMINATION**

| | |
|---|---|
| **Who do you believe discriminated against you?** | Employer ☑   Union ☐   Employment Agency ☐   Other Organization ☐<br><br>Organization Name: _Texas Department of Public Safety (TX DPS)_<br><br>Street Address: _5805 North Lamar Blvd_ Suite: _____<br><br>City: _Austin_ County: _Travis_ State: _TX_ Zip Code: _78152_<br><br>Name of Human Resources Director or Owner: _Valerie Brown, Chief_<br><br>Email Address: _Valerie.Brown@_ Phone number of organization: _(512) 424-5900_<br>_dps.texas.gov_<br><br>How many employees (estimated) does the organization have at all locations? Please check one:<br><br>Less than 15 ☐   15-100 ☐   101-200 ☐   201-500 ☐   More than 500 ☑<br><br>Tell us where you work(ed), or applied to work, if it is different from the organization address above:<br><br>Street Address: _____ Suite: _____<br><br>City: _____ County: _____ State: _____ Zip Code: _____ |
| **Why do you think you were discriminated against?** | I believe I was discriminated against because of:<br><br>☐  Age (40 or older) – Your age: _____<br><br>☑  Color – Your color: _Brown_<br><br>☐  Disability – Circle all that relate to this inquiry:<br> ○  I have a disability<br> ○  I had a disability in the past<br> ○  I don't have a disability but I am treated as if I have a disability<br> ○  I am closely related to or associated with a person with a disability<br><br>Your disability: _PTSD_<br><br>Is your employer aware of your disability? Yes ☐   No ☑<br><br>If yes, how? _____<br><br>☐  Genetic information, my family medical history, or my participation in genetic services like counseling, education or testing<br><br>☑  National origin – Your national origin: _Mexico_<br><br>☑  Race – Your race: _White - Hispanic_<br><br>☐  Religion – Your religion: _____<br><br>☐  Sex (including pregnancy, gender identity, or sexual orientation)<br><br>☑  Retaliation – Circle all that relate to this inquiry:<br> ○  I filed a charge of job discrimination about any of the above<br> ○  I contacted a government agency to complain about job discrimination<br> ○  I complained to my employer about job discrimination<br> ○  I helped or was a witness in someone else's complaint about job discrimination<br> ○  I requested an accommodation for my disability or religion<br><br>☐  None of the above – Your basis for this inquiry: _____ |

**THIS QUESTIONNAIRE IS NOT A CHARGE OF DISCRIMINATION**

| | |
|---|---|
| **Who was treated the SAME as you?** | Name: _Brenda Helton_    Job Title: _Administrative Analyst_<br>Check how they are different from you:<br>Age ☑  Color ☐  Disability ☐  National Origin ☐  Race ☐  Religion ☐  Sex ☐<br>How were they treated the same? _Ostrized because of supporting_<br>_me and harrassed by employers._    Date: _Jan 2021_ |
| **Are there any witnesses to any of the job actions taken against you? If yes, please tell us what they will say.** | 1. Name: _Jori McPherson_    Job Title: _Special Agent_<br>Address: _____    Phone: (251) 258-5193<br>What will they tell us? _His treatment by Capt. Mary Koeng and_<br>_disparities towards Our squad consists of Minorities_<br>2. Name: _Brenda Helton_    Job Title: _Administrative Assistant_<br>Address: _____    Phone: (512) 481-4502<br>What will they tell us? _Her treatment by Co-Lieutenant unfair_<br>_treatment, harrassment and retaliation._ |
| **Have you already filed a charge on this matter with the EEOC?** | Yes ☐   No ☑<br>If yes:  Date you filed: _____  Charge Number: _____ |
| **Have you filed a complaint on this matter with another agency?** | Yes ☐   No ☑<br>If yes:  Agency name: _____<br>Date you filed: _____  Complaint Number: _____ |
| **Do you have someone representing you in this matter?** | Yes ☑   No ☐<br>If yes:  Attorney ☐   Union ☐   Other ☐<br>Name: _Leonard Mungo_    Date of Contact: _9/15/2021_<br>Email address: _MUNGOL116@MSN.COM_  Phone: (313) 903-3303 |
| **Privacy Act Statement** | This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are: 1) EEOC INQUIRY QUESTIONNAIRE 290A, ISSUED Sept. 1, 2017. 2) AUTHORITY.  42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. §12117(a). 3) PRINCIPAL PURPOSE. The purpose of this form is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge counseling, if appropriate. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's assessment of your situation. It is not mandatory that this form be used to provide the requested information.  EEOC Inquiry Questionnaire 290A, Issued Sept. 1, 2017. |

Please note:  You must file a charge of job discrimination within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located where a state or local government agency enforces laws similar to the EEOC's laws.  If you would like to file a charge of discrimination immediately, contact the EEOC office closest to you.  We recommend that you keep a copy pf this Questionnaire and the Cover Letter for your records.

**THIS QUESTIONNAIRE IS NOT A CHARGE OF DISCRIMINATION**

## ATTACHMENT "A"
### Danny Martinez

## CLASS ALLEGATIONS:

I also file these charges because I believe that the TEXAS DEPARTMENT OF PUBLIC SAFETY (Agency) maintains a pattern or practice of discrimination against minorities and specifically African Americans and Hispanics by creating and maintaining a "Racially Hostile Environment" and Retaliation against African Americans, Hispanics and other Minorities/Protected Classes when those individuals report and or file formal and or informal complaints against the TEXAS DEPARTMENT OF PUBLIC SAFETY. I have been unlawfully discriminated against and victimized by the Agency by being subjected to "Racially Hostile Environment" Retaliated against for reporting unlawful discriminatory treatment. I believe there are similarly situated minorities, including but not limited to African Americans and Hispanics that have been unlawfully discriminated against and victimized by the TEXAS DEPARTMENT OF PUBLIC SAFETY by being subjected to "Racially Hostile Environment" Retaliated against for reporting same including being denied the opportunity for career enhancing assignments, promotions and denied reasonable accommodations. I file this charge on behalf of all of those individuals. The Agencies' policies that create and maintain said unlawful discriminatory work conditions for African Americans, Hispanics and other minorities/protected classes is neither job-related nor consistent with business necessity and adversely impacts African Americans, Hispanics and other minorities/protected classes.